THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DENNIS J. RHODES, Defendant-Appellant.

Fourth District   No. 4—92—0090

Opinion filed April 15, 1993.

702

Thomas W. Burkart, of Burkart Law Offices, of Hamel, for appellant.

Vince Moreth, State's Attorney, of Carlinville (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Dennis J. Rhodes was convicted of unlawful delivery of alcohol to minors (Ill. Rev. Stat. 1989, ch. 43, par. 131) following a jury trial in Macoupin County, Illinois. He was placed on conditional discharge for a period of six months, fined $250 plus costs and sentenced to serve 10 weekends in the county jail. Defendant was also ordered to perform 100 hours of community service. He has appealed, contending (1) the State's deliberate destruction of evidence deprived him of a fair trial and due process; (2) the trial court erred by giving certain jury instructions; (3) the trial court erred in allowing the State to present evidence that minors other than those named in the information were served alcohol; and (4) the trial court erred in denying his motion *in limine* to restrict the State's use of an out-of-court statement by him where the State had filed formal discovery that there was no such statement in existence. We affirm.

The evidence presented at trial established that 13-year-old Carey Gan, 14-year-old Adrienne Spudich, and 15-year-old Alena Machuda attended a party at defendant's house on July 19, 1991.

Gan paid defendant between $2 and $4 and drank three beers and one mixed drink. Machuda drank two beers and one mixed drink although she did not pay defendant any money. Chris Best, a friend of defendant, gave her the beers. Spudich paid defendant $2 but only had a sip of Gan's mixed drink.

All three girls were spending the night at Machuda's house. Gan became sick and woke up Machuda's mother, who realized the girls had been drinking. She had the other girls each phone their parents to come and get them. They all then went to the police station early that morning where each girl gave a written statement indicating they had been drinking alcohol at defendant's house and listed the other minors present at that party.

Defendant testified that on July 19, 1991, he was supposed to go to another party with a friend, Darrin Bianco. As they were getting ready to go out, Best arrived, then left with Bianco and returned to defendant's house with Machuda and two other high school students. Defendant explained that his refrigerator is equipped to hold a keg of beer which he keeps on tap at all times. The refrigerator has a spigot on the side of it to get beer directly from the keg. When Best, Bianco, Machuda and the others returned, the keg was nearly empty, so defendant filled a pitcher with the remaining beer and left with Bianco to buy a new keg. They did so and upon returning, defendant and Bianco drank the remaining beer in the pitcher. Defendant saw nobody under the age of 21 drinking beer.

Defendant left his house with Bianco but soon returned only to find several more people at his house, including Gan and Spudich. Defendant testified that two people present at the party were 21 years old and he provided them with beer and a mixed drink containing Malibu rum and pineapple juice. To the best of his knowledge, nobody else drank any alcohol while he was gone. The party ended at approximately midnight, and at 5:30 a.m. the police arrived at his house and placed him under arrest for unlawful delivery of alcohol to minors.

The original information charged defendant with committing the offense of:

> "Unlawful delivery of alcohol to minors, in that said defendant, after purchasing or otherwise obtaining alcoholic liquor, gave or delivered said alcoholic liquor to Alena M. Machuda, Adrienne N. Spudich, and Carey A. Gan, a person under the age of 21 years."

At the pretrial conference, the information was amended, over defendant's objection, by interlineation to change it to read giving or delivering alcohol to "Alena M. Machuda, Adrienne N. Spudich *or* Carey A. Gan." Following a jury trial, defendant was convicted and timely filed this appeal.

Defendant first contends the State's deliberate destruction of evidence consisting of the original statements prepared by the witnesses deprived him of a fair trial and due process of law. Gan, Spudich and Machuda each testified they made two handwritten statements at the police station that morning. Machuda testified Officer Stipcak took her first statement away from her and told her to write another one including names of all the people at the party. She explained the only difference between the first and second statement she prepared was that the second one contained the names of the people at the party.

Spudich saw Officer Stipcak tear up her first written statement and throw it away. She also testified the only difference between the two statements was that the second one contained greater detail including names of the people present at the party. Gan also made two handwritten statements. She did not know what Officer Stipcak did with her first statement. Her second statement contained names of the people who were present at the party.

The United States Supreme Court has stated:

"Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality [citation], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*California v. Trombetta* (1984), 467 U.S. 479, 488-89, 81 L. Ed. 2d 413, 422, 104 S. Ct. 2528, 2534.)

In addition, unless a defendant can show bad faith on the part of the police, a failure to preserve potentially useful evidence does not constitute a denial of due process. *Arizona v. Youngblood* (1988), 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333; *People v. Young* (1991), 220 Ill. App. 3d 488, 496, 581 N.E.2d 241, 246-47.

■ Defendant has failed to show bad faith on the part of Officer Stipcak. All three girls testified Officer Stipcak asked them to write the second statements only because the first ones did not include names of the other people present at the party. Defendant

had an opportunity to cross-examine each witness about the differences between her statements and each girl testified the only difference between the statements was the inclusion of names of the people at the party. Defendant has thus failed to show that a violation of his constitutional rights occurred.

Defendant next alleges the trial court erred in giving two of the State's jury instructions which addressed the theory of accountability. He asserts the jury was improperly instructed on a theory of accountability where the evidence was limited to an accusation made by three girls of his conduct as a principal only. Defendant also contends the statute under which he was convicted makes the giving of an instruction on a theory of accountability improper because the offense is so defined that his conduct was inevitably incident to its commission.

The State initially responds that defendant has waived this issue because no record of the jury instructions conference was provided and the notes on the instructions contained in the record on appeal are indecipherable. Alternatively, the State alleges that accountability instructions were properly given.

■ The State correctly notes the jury instruction conference was not transcribed nor did defendant prepare a proposed report of proceedings. (134 Ill. 2d R. 323(c).) The jury instructions submitted by both the State and defendant are contained in the record on appeal. The two instructions at issue here, People's Nos. 9 and 10, contained the notation "g over obj." The record does not show the grounds for defendant's objection, the issue is waived, and there is no substantial defect in the instructions given. *People v. Waisvisz* (1991), 221 Ill. App. 3d 667, 676, 582 N.E.2d 1383, 1389-90.

Defendant contends these instructions were improper because they allowed him to be convicted based upon a theory of accountability without proof of the essential elements of accountability. He alleges these instructions were improper because the charged offense is defined such that his conduct was inevitably incident to the commission of the offense.

People's instruction No. 9, patterned after Illinois Pattern Jury Instructions, Criminal, No. 5.03 (2d ed. 1981) (hereinafter IPI Criminal 2d), stated:

> "A person is legally responsible for the conduct of another person, when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he knowingly solicits, aids, abets,

agrees to aid or attempts to aid the other person in the planning or commission of the offense."

People's instruction No. 10, patterned after IPI Criminal 2d No. 5.06, provided:

"A person who is legally responsible for the conduct of another may be convicted for the offense committed by the other person even though the other person, who it is claimed committed the offense has not been prosecuted."

A person is legally accountable for the conduct of another when either before or during the commission of the offense, and with the intent to promote or facilitate the commission of the offense, he solicits, aids, abets, agrees, or attempts to aid another person in the planning or commission of the offense. (*People v. J.H.* (1990), 136 Ill. 2d 1, 17, 554 N.E.2d 961, 968, *cert. denied* (1990), 498 U.S. 942, 112 L. Ed. 2d 315, 111 S. Ct. 351.) That a defendant may be guilty as a principal does not preclude instructions on accountability; also, accountability instructions may be used even though the defendant is on trial alone. (*People v. Wilkerson* (1984), 123 Ill. App. 3d 527, 536, 463 N.E.2d 139, 147.) The Illinois Supreme Court has held that the fact that defendant might have been guilty of direct participation in the crime does not make an accountability instruction improper, as long as there was sufficient evidence that he aided another in the commission of the crime. *People v. Whitlock* (1988), 174 Ill. App. 3d 749, 781, 528 N.E.2d 1371, 1390; *People v. Stark* (1966), 33 Ill. 2d 616, 622, 213 N.E.2d 503, 506.

An accused may be convicted on a theory of accountability if the evidence supports such a conviction. (*Whitlock*, 174 Ill. App. 3d at 780-81, 528 N.E.2d at 1390.) Although submission of an instruction on accountability in the absence of supporting evidence is error, it is proper to instruct a jury on the principal action on accountability where the evidence supports both theories. Evidence, however slight, on accountability along with evidence of actions as a principal offender is sufficient to support both instructions regardless of whether both theories were advanced in the State's case in chief. (*People v. Batchelor* (1990), 202 Ill. App. 3d 316, 331, 559 N.E.2d 948, 958.) Any error giving instructions on accountability would have been harmless because sufficient evidence existed to find defendant guilty as a principal. *Batchelor*, 202 Ill. App. 3d at 332, 559 N.E.2d at 959.

The trial court properly gave the accountability instructions. The State contends defendant aided and abetted Best in his efforts to provide alcohol to Machuda. Machuda testified Best gave her two

beers which came from the spigot on defendant's refrigerator and defendant gave her a mixed drink. Gan testified defendant gave her the alcohol she consumed. Spudich saw defendant provide alcohol to Gan and she had a taste of Gan's mixed drink. Defendant allowed Best to remain in his house while he and Bianco left to go to another party. Best was in charge of the stereo and was to guard the house because he had invited people over to defendant's house. Defendant also asked Best to remain at the house while they went to purchase a new keg of beer because Best had invited these people to the house, including Machuda. Defendant testified he made the mixed drinks and bought the keg of beer. Thus, the evidence established defendant provided the alcohol to Machuda and Gan. Best gave alcoholic drinks to Machuda, and defendant provided Best with the alcohol and a place to serve it.

Defendant also contends these instructions were improperly given because his conduct was inevitably incident to the commission of the charged offense. Section 5—2(c)(2) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c)(2)) provides that a person is not legally accountable for the conduct of another, unless the statute defining the offense provides otherwise, if: "[t]he offense is so defined that his conduct was inevitably incident to its commission." Defendant contends this exception prevents him from being held accountable for Best's actions and thus, the accountability instructions were improper.

■ Defendant has failed to show how his conduct was inevitably incident to the commission of the crime. Defendant has failed to show any connection between the possible charge under section 6—16(c) of the Liquor Control Act of 1934 (Act) (Ill. Rev. Stat. 1989, ch. 43, par. 131(c)) and the exception to accountability under section 5—2(c)(2) of the Code. Thus, the accountability instructions were properly given.

Moreover, the committee comments to section 5—2(c) of the Code refute defendant's argument. Those comments state in part:

"The Model Penal Code suggests such examples as these: Should a man accepting a prostitute's solicitation be guilty of prostitution? Should a woman upon whom a miscarriage is produced be guilty of abortion? Should a bribe-taker be guilty of bribery? (Model Penal Code comment at 35 (Tent. Draft No. 1, 1953).) In many situations, the scope of criminal liability, if extended in this fashion, might make law enforcement more difficult. In any event, subsections (c)(1) and (c)(2) do not prevent the extension of liability to such persons by pro-

vision in the particular statutes if this is desired. Thus, if it be decided that a bribe-taker should be treated as guilty of bribery, this can be provided in the bribery section. All that is done in these provisions is to state the rule that persons falling under subsections (c)(1) and (c)(2) are not guilty if there is no specific provision to the contrary." (Ill. Ann. Stat., ch. 38, par. 5—2, Committee Comments, at 236 (Smith-Hurd 1989).) Defendant cannot rely on this exception to prove the jury instructions on accountability were improperly given. Defendant is not like the victim in a blackmail plot who pays over the money. Defendant directly participated in the crime and also assisted Best in committing this offense. This exception to accountability is inapplicable.

Defendant next alleges the trial court erred in giving certain of the State's instructions because these instructions omitted a necessary element of the charged offense. He asserts the instructions which were given stated he failed to prove the beverages contained a lesser amount of alcohol than defined by statute and this placed upon him the burden of disproving an essential element of the charged offense.

Section 1—3.05 of the Act defines alcoholic liquor as including "alcohol, spirits, wine and beer, *** capable of being consumed as a beverage by a human being. The provisions of this Act shall not apply to *** any liquid or solid containing one-half of one percent, or less, of alcohol by volume." Ill. Rev. Stat. 1989, ch. 43, par. 95.05.

Defendant's tendered instructions, which were refused, stated: "A person commits the offense of gift of alcohol to a minor when he knowingly gives or delivers any beverage containing more than .5% of alcohol by volume to a person under 21 years of age." People's instruction No. 14 which was given, stated: "A person commits the offense of unlawful delivery of alcohol to a minor when he, after purchasing or otherwise obtaining alcoholic liquor, knowingly gives or delivers that alcoholic liquor to a person under the age of 21 years." Defendant contends the instructions given failed to state an essential element of the crime, namely, that the alcoholic beverages given to the minors contained .5% alcohol by volume.

■■ Where the alleged intoxicating liquor was shown to be one of the liquors mentioned in the statute, its intoxicating quality did not need to be shown by the evidence. (*People v. Isonhart* (1930), 259 Ill. App. 9, 12.) The statutory definition of alcoholic liquor includes beer. Defendant testified he provided a keg of Bud Light, and Gan and Machuda both testified they drank beer. They both testified they are under 21 years of age. Accordingly, because the

minors testified they drank beer, a beverage mentioned in the statute, the State did not have to present evidence of the intoxicating quality of the alcohol. Furthermore, defendant's defense in this case was not that the beverage provided was not alcoholic, but rather that nobody under the age of 21 was consuming any alcoholic beverages. Accordingly, the State's instructions were properly given.

■ Defendant asserts the trial court erred by allowing evidence which established he gave alcoholic beverages to minors other than those named in the information. He contends that requiring him to defend against charges of giving alcohol to unknown minors caused him unfair surprise, undermined his presumption of innocence and denied him a fair trial.

Evidence of collateral crimes, crimes for which the defendant is not on trial, is inadmissible if relevant merely to establish a defendant's propensity to commit crime. However, such evidence is admissible if offered as part of the narrative of the offense or to impart meaning to an otherwise unexplained appearance by the police. *People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242; *People v. Waller* (1990), 195 Ill. App. 3d 376, 379, 552 N.E.2d 351, 352.

Gan, Machuda, and Spudich testified there were other people present at the party and none of these people were over 21 years of age. Each girl testified that some of these minors were drinking; however, they also testified that some of these people were not drinking. This testimony cannot be said to have been offered to show defendant had a greater propensity to commit the crime charged. Rather, the testimony is part of an ongoing narrative of the circumstances and merely explains the place and manner in which the girls received the alcoholic beverages. As such, it was properly admitted.

■ Finally, defendant contends the trial court erred by denying his motion *in limine* to restrict the use of his statement. He alleges the State had filed formal discovery stating there was no such statement and thereafter did not supplement discovery with this statement. Defendant asserts he was deprived of a fair opportunity to investigate the accuracy of the statement or prepare for cross-examination.

A pretrial conference was held on December 2, 1991. At that time, defendant made a motion *in limine* to prevent the State from using a statement of his in which he allegedly telephoned Gan shortly after the incident and asked her to change her story. Defendant contends the State was prohibited from using the state-

ment because its answer to discovery, filed on November 12, 1991, indicated it had no such statement.

At the pretrial conference, the State's Attorney indicated that at the time the answer to discovery was filed, it had no such statement. The State's Attorney further indicated he received this information regarding defendant's statement over the prior weekend. The trial court first suggested the State provide defendant with the statement by noon on that date. However, when informed that there was no written statement, but rather there would be testimony from a witness regarding this statement, the court suggested defendant's attorney could speak to the witness. Neither the State's Attorney nor defendant's attorney objected to this suggestion by the court.

The failure to comply with discovery requirements does not in all instances necessitate a new trial; a new trial should be granted only if defendant is prejudiced by the discovery violation and the trial court failed to eliminate the prejudice. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 172, 514 N.E.2d 970, 974.) Courts have repeatedly found no prejudice occurred where the defendant had an opportunity to interview the witness and did not ask for a continuance but proceeded to trial. *People v. Schutz* (1990), 201 Ill. App. 3d 154, 158-59, 559 N.E.2d 289, 293.

Defendant has failed to show any prejudice by this discovery violation. He was allowed to interview Gan about this telephone call. Moreover, he was allowed to cross-examine her regarding the telephone call and he did not ask for a continuance but elected to proceed with trial. Accordingly, the trial court did not err in denying the motion *in limine* to exclude this statement.

For the foregoing reasons, the trial court is affirmed.

Affirmed.

STEIGMANN, P.J., and LUND, J., concur.