THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HARRY TESTA, Defendant-Appellant.

Second District   No. 2—92—1276

Opinion filed May 6, 1994.

Alexander M. Salerno, of Palos Heights, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Robert G. Kleeman, Assistant State's Attorney, and William L. Browers, Lisa Anne Hoffman, Robert J. Biderman, and Richard G. Norris, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:
A jury convicted defendant, Harry Testa, of unlawful delivery of

a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2) (now 720 ILCS 570/401(a)(2) (West 1992))). The court sentenced him to eight years in prison and imposed a $1,400 street value fine. On appeal, defendant asserts the trial court erred in (1) admitting hearsay testimony, (2) allowing a jury instruction on accountability, and (3) denying his motion for a mistrial based upon improper closing argument by the prosecutor.

Police officer Wendy Marrello was assigned to the organized crime division, narcotics section, of the Chicago police department. Working in an undercover capacity, Marrello had a telephone conversation with Dawn Wheeler on March 14, 1991, in which Marrello indicated that she wanted to buy an ounce of cocaine. According to Marrello, Wheeler told her that "Harry could get me [Marrello] the ounce that I needed, that I had to come out to her motel room and we would do the deal there."

Later that day Marrello drove with Sergeant Isaac and Officer Blanca Fernandez to a motel in Lombard. Isaac stayed in the car while Marrello and Fernandez went to one of the rooms and knocked on the door. Defendant answered the door, and Marrello asked for Dawn. Defendant told the women to come in and explained that Dawn was in the bathroom. The officers sat on the bed to wait. When Dawn came out of the bathroom, Fernandez went in and shut the door. She could not hear anything that was said in the bedroom. Marrello testified that the defendant then stood up from the chair he was sitting in, reached up to the top of the drapes, took down a clear plastic bag which contained a white rocky powder, and handed the bag to her. She handed the defendant $1,400, and he put the money in his shirt pocket. Fernandez came out of the bathroom and she, Marrello, and Dawn left the motel. The plastic bag the defendant handed to Officer Marrello contained cocaine.

On cross-examination Officer Marrello testified that she knew Dawn Wheeler used and sold drugs and had been arrested for prostitution and possession of hypodermic needles. Wheeler had told her that she would perform sexual acts for Harry, and he would give her cocaine. Marrello affirmed that she had not spoken to Harry about getting cocaine before the day in the motel room. Nor did she and Fernandez discuss cocaine with him as the three of them sat in the motel room on March 14, waiting for Wheeler to get out of the bathroom.

Defendant testified he knew Wheeler used drugs but denied he had ever given her drugs for anything. He said he tried to get her off drugs, had been to her motel room three or four different times, and

had given her money for rent and food many times. Defendant's testimony regarding the incident in the motel room on March 14 differed dramatically from that of Officer Marrello. When Wheeler came out of the bathroom, "the other girl," meaning Officer Fernandez, went into the bathroom. According to defendant, "Dawn told me, she says, Harry, will you get the package that's up on the curtain there. And I stood up and there was a package of cocaine. And she said give it to Wendy." Defendant threw the package on the table and made several angry and derogatory remarks to the two women about being involved with drugs. Wendy got up, picked up the package, took some money out of her pocket or purse, and set it on the table. Defendant denied the cocaine was his and said that no one ever handed him any money, and he did not pick up the money. Fernandez came out of the bathroom, and defendant gathered up his clothing and went into the bathroom to finish dressing. When he came out, all three women were gone. On cross-examination defendant admitted that, having seen the drug as a police officer, he knew the package he removed from the curtain contained cocaine. He also knew that Wheeler used drugs regularly.

Defendant first challenges the trial court's admission of the hearsay conversation between Officer Marrello and Dawn Wheeler in which Wheeler told the officer that Harry could get the ounce of cocaine she needed. The State maintains that the conversation was properly admitted because it fell within the coconspirator exception to the hearsay rule. Under this exception, hearsay statements are admissible against a defendant upon an independent, *prima facie* evidentiary showing of a conspiracy or joint venture between the hearsay declarant and the defendant, if the statements were made during the course and in furtherance of the conspiracy. (*People v. Goodman* (1980), 81 Ill. 2d 278, 283; *People v. Duckworth* (1989), 180 Ill. App. 3d 792, 795; *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 623.) Defendant submits that the State did not produce sufficient independent evidence, *i.e.*, evidence separate and apart from the hearsay statements themselves, to make the requisite *prima facie* showing of a conspiracy between himself and Dawn Wheeler to deliver cocaine, and the coconspirator exception, therefore, does not apply.

To establish a *prima facie* case of conspiracy, the State must prove that two or more persons intended to commit a crime, that they engaged in a common plan to accomplish the criminal goal, and that an act or acts were done by one or more of them in furtherance of the conspiracy. (*People v. Roppo* (1992), 234 Ill. App. 3d 116, 123; *People v. Melgoza* (1992), 231 Ill. App. 3d 510, 521.) Mere knowledge

of or acquiescence in an illegal act neither constitutes conspiracy nor suffices to give rise to an inference of conspiracy. (*People v. LeShoure* (1985), 139 Ill. App. 3d 356, 363; *Deatherage*, 122 Ill. App. 3d at 623-24.) According to defendant, the State's independent evidence showed only that he delivered cocaine directly to Officer Marrello and that Wheeler was merely present and acquiesced in the crime. He insists that, absent Dawn Wheeler's statement to Marrello, the evidence did not show any agreement between himself and Wheeler to deliver cocaine.

The existence of an agreement between coconspirators to do a criminal act may be inferred from all of the surrounding facts and circumstances, including the acts and declarations of the accused. (*Melgoza*, 231 Ill. App. 3d at 521; *People v. Soteras* (1987), 153 Ill. App. 3d 449, 453.) Because of the clandestine nature of conspiracy, and the difficulty of establishing conspiratorial intent and agreement by direct evidence, the courts have permitted broad inferences to be drawn from the circumstances, acts, and conduct of the parties. (*Melgoza*, 231 Ill. App. 3d at 523; *People v. Mordick* (1981), 94 Ill. App. 3d 497, 500.) In this case there is no direct evidence of an agreement between defendant and Wheeler to commit a crime. Consequently, it is our task to determine if there was sufficient circumstantial evidence from which such an agreement could be inferred.

The State's evidence, apart from the hearsay conversation between Officer Marrello and Dawn Wheeler, showed the following facts and circumstances. Officer Marrello communicated her wish to buy cocaine to Wheeler. At Wheeler's direction, Marrello and Fernandez went to Wheeler's motel room to make the purchase. However, Wheeler was not alone in her room at the time of the drug sale. Defendant was there before the police officers arrived and, in fact, opened the door for them. He had been in Wheeler's motel room on three or four previous occasions, and he knew that Wheeler used drugs regularly. Defendant did nothing while Wheeler was in the bathroom. It was only after she came back into the bedroom, and Fernandez was out of earshot in the bathroom, that defendant retrieved the package of cocaine and handed it to Marrello. He then accepted the $1,400 Marrello handed to him and put it in his shirt pocket. Wheeler was present for the entire transaction, and when it was completed, she left the motel room with Marrello and Fernandez. Defendant, however, remained in Wheeler's room.

■ In our view these collective facts and circumstances are sufficient to support the inference that defendant and Wheeler had an agreement and were engaged in a joint venture whereby Wheeler made the contact with the buyer, Marrello, and arranged the sale,

while defendant completed the deal by physically handing over the cocaine and taking the money. Since the State made an independent, *prima facie* showing of a conspiracy, Wheeler's out-of-court statement to Marrello fell within the coconspirator exception to the hearsay rule and was properly admitted.

Defendant relies on *People v. Duckworth* (1989), 180 Ill. App. 3d 792. In *Duckworth* the codefendant, Tammy, and an undercover police officer were in the officer's car, parked in a parking lot. Tammy said that her uncle was the source of the drugs and he needed money before he could get the drugs. The officer suggested to Tammy that she have her uncle drive to their location and park nearby. Tammy then left the parking lot. Subsequently, a van entered the lot and parked near the officer's car. Tammy got out of the van and proceeded to deliver the drugs to the officer. Defendant, who was driving the van, was arrested. The issue was whether Tammy's remark that her uncle was her source was admissible against defendant as a coconspirator's statement. The court said that the mere appearance of defendant at the scene of the drug transaction was not enough to establish a conspiracy between him and Tammy. Accordingly, Tammy's hearsay statement was not admissible as an exception to the hearsay rule. In contrast to *Duckworth*, in this case the defendant was not only present in Wheeler's motel room but he retrieved the cocaine from its hiding place, handed it to the police officer, and pocketed the money. This was far more than mere presence at the scene of the transaction. *Duckworth* is not helpful to defendant.

Similarly, in *People v. Darnell* (1990), 214 Ill. App. 3d 345, a defendant's hearsay statements incriminating his two codefendants were not admissible where the defendant had conducted drug buys on five different occasions, but the codefendants were nearby during the last buy only. The first codefendant had merely followed the defendant to the scene by car and was parked in the vicinity, but out of sight, while the defendant conducted the drug transaction. The second codefendant, who was in the car with the first codefendant when the drug sale itself took place, was seen handing a white shopping bag to the defendant moments before the sale. The bag was later found to contain cocaine. Without more the court could find no independent evidence of an agreement. *Darnell* differs significantly from this case. While neither codefendant in *Darnell* was involved in the transaction itself, the State's evidence here showed that defendant made the actual, physical delivery. The evidence in this case, unlike that in *Darnell*, allows the inference that defendant and Wheeler had an agreement to deliver cocaine.

Defendant next asserts that the trial court erred in granting the

State's request for an accountability instruction to the jury. Accountability is not a crime in and of itself, and individuals are not charged with the offense of accountability. (*People v. Stanciel* (1992), 153 Ill. 2d 218, 233.) Rather, individuals may be charged with a criminal offense, but their guilt is established through behavior which makes them accountable for the crimes of others. Accordingly, accountability is a method through which a criminal conviction may be reached. *Stanciel*, 153 Ill. 2d at 233.

A person is legally accountable for conduct of another when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he solicits, aids, abets, agrees, or attempts to aid the other person in the planning or commission of the offense. (Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c) (now 720 ILCS 5/5—2(c) (West 1992)); *People v. J.H.* (1990), 136 Ill. 2d 1, 17; *People v. Rhodes* (1993), 243 Ill. App. 3d 701, 706.) Even the slightest evidence in support of a theory of accountability warrants giving the jury an accountability instruction. (*People v. Acklin* (1990), 208 Ill. App. 3d 616, 623; *People v. Batchelor* (1990), 202 Ill. App. 3d 316, 331.) Some evidence on accountability, along with evidence that defendant acted as a principal offender, is adequate to support instructions on both principal action and accountability, regardless of whether both theories were advanced in the State's case in chief. (*Rhodes*, 243 Ill. App. 3d at 706; *Batchelor*, 202 Ill. App. 3d at 331.) Accountability instructions may be given even though the defendant is on trial alone. (*Rhodes*, 243 Ill. App. 3d 701.) Defendant insists that the State did not offer *any* evidence which could reasonably lead to an argument based on accountability. Specifically, defendant contends that the State made no showing that he had the requisite intent to promote or facilitate commission of the crime. We disagree.

Defendant testified that he took the cocaine down from the curtains and threw it on the table, and Marrello then picked it up and set some money on the table. The State's theory was that defendant's actions constituted unlawful delivery of cocaine. Defendant's defense was that these actions on his part were innocent. He claimed he did not know Wheeler was selling drugs to Marrello and maintained that he retrieved the package from the curtains only because Wheeler asked him to do so. Therefore, defendant argued, he had no criminal intent. Defendant's strategy, then, was to argue that Wheeler was the guilty party, while he was an innocent bystander or an unwitting participant. However, Officer Marrello's testimony clearly conflicted with defendant's position that he was innocent. Keeping in mind that defendant had cast Wheeler in the role of the

principal offender, the conflicting testimony concerning his own role raised the question of whether, at the time he took the cocaine down and threw it on the table, defendant acted innocently or with the intent to promote or facilitate the offense he attributed to Wheeler.

■ The nature of defendant's intent was a factual question for the jury to decide. (*People v. Murff* (1963), 29 Ill. 2d 303, 305; *People v. Baum* (1991), 219 Ill. App. 3d 199, 201.) While there was no direct evidence of defendant's intent at the relevant time, intent may be inferred from the nature of the defendant's actions as well as the circumstances surrounding commission of the offense (*Stanciel*, 153 Ill. 2d 218; *People v. Terrell* (1989), 132 Ill. 2d 178, 204). Both sides presented evidence concerning the character of defendant's actions and the circumstances of the offense. If the jury believed defendant's argument that Wheeler was the principal, but also found that defendant acted with the intent to facilitate or promote the crime committed by Wheeler, then it could properly have found him guilty of delivery of cocaine on an accountability theory. Absent an accountability instruction, the jury conceivably would not have been able to render a guilty verdict against defendant even though it determined he acted with the intent necessary for accountability. Since some evidence on accountability was presented to the jury, the trial court did not err in giving an accountability instruction.

Defendant's citation of *People v. Lusietto* (1976), 41 Ill. App. 3d 205, is not persuasive that the accountability instruction should not have been given in this case. The evidence against the defendant in *Lusietto*, who was charged with burglary, was conclusive as to his direct participation in the crime. He was found inside the burgled premises, lying under a bed with an automatic pistol within reach. The only acts of defendant which might have established guilt based on accountability would also have been acts of a principal. Even the State acknowledged that the overwhelming weight of the evidence supported defendant's conviction as a principal. Since the evidence clearly established that defendant was a principal, the *Lusietto* court held that the lower court should not have given an accountability instruction.

In contrast to *Lusietto*, the evidence here is not so conclusive that defendant was a principal as to preclude an instruction on accountability. Although she said Harry could get the drugs, Wheeler herself, who had sold drugs in the past, set up the deal. Marrello never talked to Harry about a drug purchase, and the sale was made in Wheeler's room. Harry did retrieve the package of cocaine, hand it to Marrello, and pocket the money. However, in light of all the other circumstances, defendant's conduct could be perceived as aiding and abetting

Wheeler in the delivery of cocaine. While this was not overwhelming evidence on accountability, it certainly was enough to warrant an accountability instruction, since even slight evidence on the theory will support such an instruction (*People v. Acklin*, 208 Ill. App. 3d at 623).

Defendant's final claim is that he should have been granted a mistrial due to improper closing argument by the prosecutor. While the prosecutor is allowed wide latitude in closing argument, the propriety of his remarks is a matter for the discretion of the trial court, whose determination will not be reversed absent an abuse of that discretion. (*People v. Cosme* (1993), 247 Ill. App. 3d 420, 432-33; *People v. Cullen* (1992), 233 Ill. App. 3d 794, 799.) Upon reviewing the remarks cited by defendant in context, we find no abuse of discretion.

Prior to trial the State moved *in limine*, and defendant agreed, to exclude evidence concerning Dawn Wheeler's guilty plea and prison sentence, since such evidence was not relevant to the charges against defendant. Subsequently, during rebuttal in closing argument, the prosecutor told the jury that the case was

> "about Harry Testa and cocaine. It is not about Dawn Wheeler. Whether or not that case was heard some other day is not before you today, it is about Harry Testa."

Defendant submits that these statements suggested to the jury that there was a case pending against Wheeler, precisely the irrelevant subject matter barred by the motion *in limine*. Defendant urges that the prosecutor's remarks were prejudicial to him because, in reliance on the motion *in limine*, he did not argue that Wheeler was actually responsible for the delivery of cocaine or that she had pleaded guilty. Noting that the comments were made in rebuttal, defendant emphasizes that the prosecution proffered a new theory, or at least altered its case, at a time when he could not refute the change. Defendant attributes far more effect to the challenged remarks than they merit.

■ The prosecutor did not inform the jury that Wheeler had pleaded guilty and received a prison sentence. In fact, his statements contained only the slightest shadow of a suggestion that there *might* have been a case against Wheeler. Such a suggestion could hardly have come as a surprise to the jurors. They had heard evidence from both the State and the defendant that Wheeler was intimately involved in the sale of cocaine to Officer Marrello. These remote, undirected remarks in no way changed the State's theory or added anything new to the State's case.

Furthermore, defendant's contention that he was prejudiced by the comments is unfounded. While he may not have argued, in an accountability context, that Wheeler was the guilty party, he

certainly did try to show that she was responsible for the crime in his defense to the State's case in chief. Defendant testified that he was unaware of what was about to happen and that, when he discovered Wheeler was selling cocaine to Marrello, he threw the package on the table in disgust and anger. Hence, even if the State had changed its approach during closing argument, in the way claimed by defendant, he would not have been prejudiced by not being able to confront directly the State's accountability argument. He would have argued his innocence and Wheeler's guilt in any case.

Most significantly though, when his comments are read in context, it is abundantly clear that the prosecutor was merely trying to assure that the jury had the proper focus. Dawn Wheeler had figured prominently in the tale woven by the evidence, right alongside the defendant. It was important under the circumstances to make the point to the jury that it was only defendant who was on trial, not Wheeler. We believe the remarks attacked by defendant were clearly directed to this purpose and did not come close to modifying the case the State had presented. In sum, since the prosecutor's comments in closing argument were not improper, the trial court did not abuse its discretion when it denied defendant's motion for a mistrial.

For all of the reasons set forth above, the defendant's conviction is affirmed.

Affirmed.

DOYLE and COLWELL, JJ., concur.