No. 2--00--0846
_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 SECOND DISTRICT
_________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court
OF ILLINOIS, ) of Kane County.
 )
 Plaintiff-Appellee, )
 ) No. 99--CF--1308
v. )
 )
JAVIER M. BELTRAN, ) Honorable
 ) Donald C. Hudson,
 Defendant-Appellant. ) Judge, Presiding.
_________________________________________________________________

 JUSTICE CALLUM delivered the opinion of the court:
 The State petitioned to adjudicate defendant, Javier M. Beltran, a
delinquent minor. Then, pursuant to section 5--805(2) of the Juvenile
Court Act of 1987 (the Act) (705 ILCS 405/5--805(2) (West 1998)), the State
moved to prosecute defendant under the criminal law. The juvenile court
granted that motion, and a jury convicted defendant of three counts of
attempted first-degree murder (720 ILCS 5/8--4(a), 9--1(a)(1) (West 1998))
and three counts of aggravated discharge of a firearm (720 ILCS 5/24--
1.2(a)(2) (West 1998)). On two of the attempt counts, the trial court
sentenced defendant to consecutive prison terms totaling 21 years. On the
remaining counts, the court imposed concurrent eight-year sentences.
Defendant appeals, arguing that (1) section 5--805(2) of the Act violated
his right to due process of law (U.S. Const., amend. XIV); (2) the trial
court erred in instructing the jury on accountability; (3) the convictions
of aggravated discharge of a firearm violated the one-act, one-crime rule;
and (4) the imposition of consecutive sentences violated defendant's due
process rights (U.S. Const., amend. XIV; Apprendi v. New Jersey, 530 U.S.
466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)). We affirm in part and
vacate in part.
 I. FACTS
 In its petition for adjudication, the State alleged that defendant
had committed multiple counts of attempted first-degree murder, a Class X
felony (720 ILCS 5/8--4(c)(1) (West 1998)), and aggravated discharge of a
firearm. On the date of the alleged offenses, defendant was 15 years old.
In its motion to prosecute, the State asserted the existence of probable
cause to believe the petition's allegations. See 705 ILCS 405/5--805(2)(a)
(West 1998).
 At a hearing, the State presented evidence to establish probable
cause, and the juvenile court found it sufficient. After the presentation
of additional evidence, the court determined that defendant had the burden
to rebut the presumption that he should be prosecuted. See 705 ILCS 405/5--
805(2)(a) (West 1998). The court considered the statutory factors (705
ILCS 405/5--805(2)(b) (West 1998)) and concluded that the presumption
stood. Accordingly, the court granted the State's motion.
 A grand jury indicted defendant. At trial, the State presented the
following evidence relevant to our analysis. Eloy Cerenil (Eloy) testified
that on April 10, 1999, about 8:15 p.m., he was in his driveway with
Rolando Cerenil (Rolando) and Arturo Garcia. Eloy heard gunfire, and a
bullet hit him. The bullet penetrated his spine and left him paralyzed
from the waist down. He did not see who shot him.
 Rolando testified that he heard six or seven shots. Defendant was
the shooter, and Adam Luna was with him.
 Garcia testified that defendant fired five shots and that Luna was at
his side, also holding a gun. A bullet grazed Garcia. Defendant and Luna
ran off.
 After defendant presented evidence of an alibi, the State proffered a
jury instruction on accountability (see Illinois Pattern Jury Instructions,
Criminal, No. 5.03 (4th ed. 2000)). Defendant objected, arguing that there
had been no "indication of accountability." Nevertheless, relying on
People v. Testa, 261 Ill. App. 3d 1025 (1994), the trial court found the
instruction appropriate because the evidence suggested that two people were
"acting together" in the shooting.
 In denying his posttrial motion, the court rejected defendant's
constitutional attack on section 5--805(2) of the Act. Pursuant to section
5--8--4(a) of the Unified Code of Corrections (the Code) (730 ILCS 5/5--8--
4(a) (West 1998)), the court imposed consecutive sentences upon finding
that defendant inflicted "severe bodily injury" and committed his offenses
"as part of a single course of conduct during which there was no
substantial change in the nature of the criminal objective." 730 ILCS 5/5--
8--4(a) (West 1998). In denying defendant's motion to reconsider, the
court declined to merge the aggravated discharge counts into the attempt
counts. Defendant appealed.

 II. SECTION 5--805(2) OF THE ACT
 Defendant argues that, in two respects, section 5--805(2) violates
due process. First, he asserts that the statute runs afoul of Apprendi.
Although he did not raise that claim in the trial court, a constitutional
challenge may be raised at any time. People v. Vilces, 321 Ill. App. 3d
937, 943 (2001). Second, he contends that the statute shifts to the minor
an impermissible burden. The trial court rejected that claim, but our
review is de novo. See People v. Carney, 196 Ill. 2d 518, 526 (2001).
 A. The Statute
 In general, when the State petitions for an adjudication of
delinquency, the minor is subject only to the sanctions available under the
Act. See 705 ILCS 405/5--120 (West 1998). The most serious of those
sanctions is the minor's commitment to the juvenile division of the
Department of Corrections until his 21st birthday. See 705 ILCS 405/5--
750 (West 1998). However, in some circumstances, the State may move the
juvenile court to transfer the case to the criminal court, allowing the
State to pursue the sanctions available under the criminal law. Depending
on the facts, a transfer may be mandatory (705 ILCS 405/5--805(1) (West
1998)), presumptive (705 ILCS 405/5--805(2) (West 1998)), or discretionary
(705 ILCS 405/5--805(3) (West 1998)). Here, the State obtained a
presumptive transfer under section 5--805(2).
 To seek a presumptive transfer, the State must allege that (1) the
minor committed, e.g., a Class X felony (other than armed violence) or
aggravated discharge of a firearm; and (2) the minor was at least 15 years
old. 705 ILCS 405/5--805(2)(a) (West 1998). If the juvenile court finds
"probable cause to believe that the allegations *** are true," there arises
a "rebuttable presumption" that the case should be transferred. 705 ILCS
405/5--805(2)(a) (West 1998). The court then "shall enter an order
permitting prosecution under the criminal laws" unless, after considering
several enumerated factors, the court finds "clear and convincing evidence
that the minor would be amenable to the care, treatment, and training
programs available through the facilities of the juvenile court." 705 ILCS
405/5--805(2)(b) (West 1998).
 B. Apprendi
 In this now-famous case, the defendant pleaded guilty to a second-
degree offense. Ordinarily, such an offense was punishable by 5 to 10
years' imprisonment. However, under New Jersey's "hate crime" law, the
trial court could impose a sentence of up to 20 years if it found, by a
preponderance of the evidence, that the defendant's purpose had been to
intimidate the victim because of, e.g., the victim's race. In Apprendi,
the trial court made such a finding and sentenced the defendant to 12
years' imprisonment.
 The Supreme Court determined that, in essence, the "hate crime" law
allowed the trial court to find, by a preponderance of the evidence, an
element of the defendant's crime. Such a procedure violated the
defendant's due process right to " 'a jury determination that [he] is
guilty of every element of the crime with which he is charged, beyond a
reasonable doubt.' " See Apprendi, 530 U.S. at 477, 147 L. Ed. 2d at 447,
120 S. Ct. at 2356, quoting United States v. Gaudin, 515 U.S. 506, 510, 132
L. Ed. 2d 444, 449, 115 S. Ct. 2310, 2313 (1995). Thus, the Court held
that, "[o]ther than the fact of a prior conviction, any fact that increases
the penalty for a crime beyond the prescribed statutory maximum must be
submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530
U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.
 Here, defendant submits the following. When the State petitioned to
adjudicate him delinquent, he faced a sanction no greater than commitment
until his 21st birthday. However, after the juvenile court found (1)
probable cause to believe the State's allegations and (2) a lack of clear
and convincing evidence of defendant's amenability to the juvenile court's
facilities, defendant faced (and ultimately received) a much greater
sanction. Thus, in violation of Apprendi, the maximum penalty was
increased upon facts that were not submitted to a jury and proved beyond a
reasonable doubt.
 Superficially, defendant appears to proffer a valid application of
Apprendi. Nevertheless, his argument fails because he attempts to divorce
the case's holding from its legal basis. New Jersey's "hate crime" law
violated due process because, as the accused in a criminal prosecution, the
defendant had the right to have a jury determine, beyond a reasonable
doubt, the facts that established the maximum penalty. A hearing under
section 5--805(2), however, is a juvenile proceeding. Thus, whether
defendant was denied due process depends on the standards applicable to
those proceedings, rather than those applicable to criminal prosecutions.
See People v. Taylor, 76 Ill. 2d 289, 301-02 (1979).
 It is well established that, in a juvenile proceeding, due process
does not require a jury. See McKeiver v. Pennsylvania, 403 U.S. 528, 545-
46, 29 L. Ed. 2d 647, 661, 91 S. Ct. 1976, 1986 (1971); People ex rel.
Carey v. Chrastka, 83 Ill. 2d 67, 74 (1980). As for the standard of proof,
due process requires proof beyond a reasonable doubt during the
adjudicatory stage of a juvenile proceeding (In re Winship, 397 U.S. 358,
367-68, 25 L. Ed. 2d 368, 377, 90 S. Ct. 1068, 1074-75 (1970)), i.e., the
stage at which " 'a determination is made as to whether a juvenile is a
"delinquent" as a result of alleged misconduct on his part, with the
consequence that he may be committed to a state institution' " (Winship,
397 U.S. at 358-59, 25 L. Ed. 2d at 372, 90 S. Ct. at 1069-70, quoting In
re Application of Gault, 387 U.S. 1, 13, 18 L. Ed. 2d 527, 538, 87 S. Ct.
1428, 1436 (1967)). However, that standard does not apply to the
dispositional stage of a juvenile proceeding. See Winship, 397 U.S. at 359
n.1, 25 L. Ed. 2d at 372 n.1, 90 S. Ct. at 1070 n.1.
 A hearing under section 5--805(2) is dispositional, not adjudicatory.
 That is, the hearing determines not the minor's guilt but the forum in
which his guilt may be adjudicated. Taylor, 76 Ill. 2d at 302. Thus,
although the juvenile court made findings that exposed him to a greater
sanction, defendant had no due process right to have a jury make those
findings beyond a reasonable doubt. Because Apprendi bears only on the
process due in criminal proceedings, the case is simply inapplicable here.
 C. Burdens
 Defendant asserts that, once the juvenile court finds probable cause
to believe the State's allegations, section 5--805(2) invokes a mandatory
rebuttable presumption that shifts to the minor the burden of proof. On
this basis, too, defendant contends that the statute violates due process.
 We first note that section 5--805(2) does not expressly place a
burden on the minor. However, it expressly invokes a "rebuttable
presumption" (705 ILCS 405/5--805(2)(a) (West 1998)), and a rebuttable
presumption necessarily shifts the burden of proof (see Heiner v. Donnan,
285 U.S. 312, 329, 76 L. Ed. 772, 780, 52 S. Ct. 358, 362 (1932)). Thus,
once the presumption arose, the juvenile court correctly inferred that
defendant had the statutory burden to rebut it.
 We further note that defendant correctly labels this a mandatory
presumption, rather than a permissive one. A permissive presumption allows
but does not require the fact finder to infer the presumed fact. A
mandatory presumption, on the other hand, is one that the fact finder may
not reject. People v. Watts, 181 Ill. 2d 133, 142 (1998). Section 5--
805(2) states that, unless the presumption is rebutted, the juvenile court
"shall enter an order permitting prosecution under the criminal laws."
(Emphasis added.) 705 ILCS 405/5--805(2)(b) (West 1998). In other words,
unless the presumption is rebutted, the court must accept the presumed fact
that a transfer is warranted. Thus, the presumption is mandatory. See
People v. O'Brien, 197 Ill. 2d 88, 93 (2001) ("shall" is "a clear
expression of legislative intent to impose a mandatory obligation").
 A mandatory rebuttable presumption violates due process when it
relieves the State of its burden to prove the elements of a crime. Watts,
181 Ill. 2d at 144-47. However, in considering statutes similar to section
5--805(2), courts across the country have unanimously upheld such
presumptions. For example, in In re Welfare of L.J.S., 539 N.W.2d 408
(Minn. Ct. App. 1995), the Minnesota Court of Appeals addressed a virtually
identical statute. The court noted that the presumption at issue does not
shift the burden of proof on the elements of an offense. Instead, the
presumption "merely determines which court will try the case and evaluate
the elements of the offense." (Emphasis added.) L.J.S., 539 N.W.2d at
413; see also State v. Coleman, 26 P.3d 613, 618 (Kan. 2001) ("The
presumption does not improperly shift the burden of proof to the defendant
on any elements of the offenses"); Commonwealth v. Cotto, 708 A.2d 806, 814
(Pa. Super. Ct. 1998) (because transfer hearing determines only "the
appropriate forum for the adjudicatory proceeding," burden on minor "does
not violate the maxim that the Commonwealth is charged with proving each
element of an offense").
 As we noted in the preceding section, our own supreme court has
recognized that a transfer hearing resolves only whether the adjudicatory
proceeding will occur in the juvenile forum. Taylor, 76 Ill. 2d at 302.
The court has further noted that a minor has no constitutional right to be
adjudicated in that forum. People v. J.S., 103 Ill. 2d 395, 402 (1984).
Indeed, the legislature chose to create the juvenile court (J.S., 103 Ill.
2d at 402), and the legislature could choose to abolish it. See Coleman,
26 P.3d at 616 ("The special treatment of juvenile offenders *** results
from statutory authority, which can be withdrawn"). Thus, the legislature
was free to impose on the minor the burden to prove that he belongs in that
forum. Regardless whether he meets that burden, the State retains the
ultimate burden to prove the elements of the crime, and the minor is
afforded due process of law.
 III. ACCOUNTABILITY
 Next, defendant argues that the State failed to submit sufficient
evidence to justify instructing the jury on accountability. He asserts
that the evidence showed that he was guilty as a principal or not guilty at
all. We disagree.
 A defendant is legally accountable for another's conduct when, before
or during the commission of a crime, and with the intent to promote or
facilitate the commission of that crime, he solicits, aids, abets, agrees,
or attempts to aid the other in the planning or commission of the crime.
720 ILCS 5/5--2(c) (West 1998); Testa, 261 Ill. App. 3d at 1030. An
instruction on the issue is justified if the State submits even the
"slightest" evidence to support a theory of accountability. Testa, 261
Ill. App. 3d at 1030. Such evidence, along with evidence that the
defendant acted as a principal, is sufficient to support an instruction on
each theory, even if the State advanced only one in its case in chief.
Testa, 261 Ill. App. 3d at 1030. We may reverse a trial court's decision
to issue a jury instruction only if the court abused its discretion.
People v. Kidd, 295 Ill. App. 3d 160, 167 (1998).
 Defendant notes that only two witnesses identified a specific shooter
and that both identified defendant. No one testified that shots were fired
by anyone else for whom defendant could have been accountable. Thus,
defendant concludes, no evidence justified an instruction on
accountability.
 We acknowledge the absence of any direct evidence that anyone but
defendant fired shots. However, evidence of accountability may be
circumstantial. People v. Cooks, 253 Ill. App. 3d 184, 188 (1993). Garcia
testified that, as defendant fired his shots, Luna was at his side, holding
a gun. Furthermore, Garcia stated that defendant fired five shots, but
Rolando testified that he heard six or seven. Thus, although no one saw
Luna fire his gun, the jury could have inferred that he did so. The jury
then could have determined that, to the extent that Luna was guilty as a
principal, defendant was guilty as an accessory.
 Defendant relies on People v. Williams, 161 Ill. 2d 1 (1994), People
v. Crowder, 239 Ill. App. 3d 1027 (1993), and People v. Lusietto, 41 Ill.
App. 3d 205 (1976). However, in each case, the State presented no evidence
to even suggest that the defendant could have been guilty as an accessory
rather than a principal. See Williams, 161 Ill. 2d at 51; Crowder, 239
Ill. App. 3d at 1030; Lusietto, 41 Ill. App. 3d at 207-08. As we
explained, that is not the case here. The trial court did not err in
instructing the jury on accountability.
 IV. ONE ACT, ONE CRIME
 Defendant asserts that his convictions of aggravated discharge of a
firearm arose from the same physical act as his convictions of attempted
first-degree murder. Thus, he concludes, the aggravated discharge
convictions must be vacated under the one-act, one-crime rule. See People
v. King, 66 Ill. 2d 551, 566 (1977). The State agrees, and so do we.
 In People v. Crespo, No. 86556 (February 16, 2001), the defendant
stabbed the victim three times in rapid succession. The defendant was
charged with, and convicted of, armed violence and aggravated battery. The
supreme court held that, although the multiple stabbings could have
supported the separate convictions, the State did not apportion the crimes
among the various wounds, either in the indictment or at trial. Because
the State portrayed the defendant's conduct as a single attack, multiple
convictions were untenable.
 Crespo controls. Here, defendant and Luna fired a series of shots at
three victims. Against each victim, defendant was charged with, and
convicted of, a count of attempt and a count of aggravated discharge.
However, as to each victim, the indictment did not specify which shots
supported which charge. Similarly, at trial, the State did not distinguish
among the shots. Thus, against each victim, defendant committed a single
act that supported only a single conviction. Because aggravated discharge
of a firearm is less serious than attempted first-degree murder, we vacate
the aggravated discharge convictions. See People v. Amaya, 321 Ill. App.
3d 923, 931 (2001).
 V. CONSECUTIVE SENTENCES
 Finally, defendant attacks section 5--8--4(a) of the Code, the basis
for his consecutive sentences. He notes that, to invoke section 5--8--
4(a), the trial court found that he inflicted "severe bodily injury" and
committed his crimes "as part of a single course of conduct during which
there was no substantial change in the nature of the criminal objective."
730 ILCS 5/5--8--4(a) (West 1998). He concludes that, under Apprendi, due
process required those facts to be submitted to a jury and proved beyond a
reasonable doubt.
 In Carney, 196 Ill. 2d at 531-32, the supreme court foreclosed
defendant's argument:
 "While, undeniably, a defendant who receives consecutive sentences
 will serve a longer period of imprisonment than a defendant who
 receives identical concurrent sentences, this fact alone does not make
 Apprendi applicable. The application by a judge of the factors
 identified in section 5--8--4(a) of the Code determines only the
 manner in which a defendant will serve his sentences for multiple
 offenses. The defendant is not exposed to punishment beyond that
 authorized by the jury's verdict, provided that the sentence for each
 separate offense does not exceed the maximum permitted by statute for
 that offense."
The court concluded "that consecutive sentences imposed under section 5--8--
4(a) of the Code do not violate the due process rights of defendants and
that the Supreme Court's Apprendi decision does not apply to such
sentences." Carney, 196 Ill. 2d at 536.
 In accordance with Carney, we reject defendant's argument.
 VI. CONCLUSION
 For these reasons, we vacate defendant's convictions of aggravated
discharge of a firearm. In all other respects, the judgment of the circuit
court of Kane County is affirmed.
 Affirmed in part and vacated in part.
 GEIGER and BYRNE, JJ., concur.